# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## LOUISVILLE DIVISION
## CIVIL ACTION NO. 3:22-CV-00312-DJH-CHL

**CHARLES W.,[1]**                                                                           **Plaintiff,**

**v.**

**COMMISSIONER OF SOCIAL SECURITY,**                                         **Defendant.**

## REPORT AND RECOMMENDATION

Before the Court is the Complaint filed by Plaintiff, Charles W. ("Claimant"). Claimant seeks judicial review of the final decision of the Commissioner of Social Security ("the Commissioner"). (DN 1.) This case was referred to the undersigned Magistrate Judge to prepare a report and recommendation. (DN 12.) Claimant and the Commissioner each filed a Fact and Law Summary. (DNs 16, 21.) The Claimant did not file a reply. Therefore, this matter is ripe for review.

For the reasons set forth below, the undersigned recommends that the final decision of the Commissioner be **AFFIRMED.**

## I.    FINDINGS OF FACT

On December 4, 2019, Claimant filed an application for supplemental security income ("SSI") alleging disability beginning on April 8, 2019. (R. at 18, 71, 80, 94, 96, 208-23.) On April 13, 2021, Administrative Law Judge ("ALJ") Jonathan Stanley ("the ALJ") conducted a hearing on Claimant's application. (*Id.* at 40-69.) In a decision dated May 19, 2021, the ALJ engaged in the five-step sequential evaluation process promulgated by the Commissioner to determine whether an individual is disabled. (*Id.* at 15-39.) In doing so, the ALJ made the following findings:

---

[1] Pursuant to General Order 23-02, the Plaintiff in this case is identified and referenced solely by first name and last initial.

1.      The claimant has not engaged in substantial gainful activity since December 4, 2019, the application date.  (*Id.* at 20.)

2.      The claimant has the following severe impairments: bilateral shoulder pain; right arm pain/lateral epicondylitis; osteoarthritis/degenerative joint disease of the left knee; bilateral foot pain; diabetes type 2 with peripheral neuropathy; edema; mild global hypokinesis of left ventricle; hypertension; obesity; major depressive disorder/persistent depressive disorder; social anxiety disorder; agoraphobia with panic disorder; and post-traumatic stress disorder.  (*Id.*)

3.      The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.  (*Id.* at 21.)

4.      [T]he claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except the claimant can frequently push and pull using the upper extremities and can occasionally push and pull using the lower extremities. He can occasionally climb stairs and ramps, but cannot climb ropes, ladders and scaffolds. The claimant can occasionally balance (with "balancing" defined as maintaining body equilibrium to prevent falling when walking standing, crouching or running on narrow, slippery, or erratically moving surfaces), and can occasionally stoop, kneel, crouch and crawl. He can frequently reach overhead and can frequently handle and finger. The claimant occasionally requires a handheld assistive device such as a cane for ambulation and must avoid concentrated exposure to temperature extremes, humidity, wetness, pulmonary irritants and vibration. He cannot work at unprotected heights or around hazards such as heavy equipment and he can understand, remember and carry out simple instructions and make simple work-related judgments. The claimant must have reasonable access to restroom facilities. He can maintain adequate attention and concentration to perform simple tasks on a sustained basis with normal supervision. The claimant can perform simple work in an object-focused environment and can manage and tolerate simple changes in the workplace routine. He can adapt to the pressures of simple routine work, and can interact occasionally with supervisors and coworkers in a nonpublic work setting.  (*Id.* at 24.)

5.      The claimant has no past relevant work.  (*Id.* at 32.)

6.      The claimant . . . was 45 years old, which is defined as a younger individual age 45-49, on the date the application was filed.  (*Id.*)

7.      The claimant has at least a high school education.  (*Id.*)

8.      Transferability of job skills is not an issue because the claimant does not have past relevant work.  (*Id.*)

9.      Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.  (*Id.* at 33.)

10.     The claimant has not been under a disability, as defined in the Social Security Act, since December 4, 2019, the date the application was filed.  (*Id.* at 34.)

Claimant subsequently requested an appeal to the Appeals Council, which denied his request for review on April 27, 2022.  (*Id.* at 4-9, 198-200.)  At that point, the ALJ's decision became the final decision of the Commissioner.  *See* 20 C.F.R. § 422.210(a) (2022); *see also* 42 U.S.C. § 405(h) (discussing finality of the Commissioner's decision).  Pursuant to 20 C.F.R. § 422.210(c), Claimant is presumed to have received that decision five days later.  20 C.F.R. § 422.210(c).  Claimant timely filed this action on June 10, 2022.  (DN 1.)

## II.     CONCLUSIONS OF LAW

The Social Security Act authorizes payments of SSI to persons with disabilities.  *See* 42 U.S.C. §§ 1381-1383f.  An individual shall be considered "disabled" if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A); *see also* 20 C.F.R. § 416.905(a) (2022).

### A.     Standard of Review

The Court may review the final decision of the Commissioner, but that review is limited to whether the Commissioner's findings are supported by "substantial evidence" and whether the Commissioner applied the correct legal standards.  42 U.S.C. § 405(g); *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).  "Substantial evidence" means "more than a mere scintilla"; it means

3

"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Court must "affirm the Commissioner's decision if it is based on substantial evidence, even if substantial evidence would also have supported the opposite conclusion." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013); *see Smith v. Sec'y of Health & Hum. Servs.*, 893 F.2d 106, 108 (6th Cir. 1989) (holding that if the court determines the ALJ's decision is supported by substantial evidence, the court "may not even inquire whether the record could support a decision the other way"). However, "failure to follow agency rules and regulations" constitutes lack of substantial evidence, even where the Commissioner's findings can otherwise be justified by evidence in the record. *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011).

**B.      Five-Step Sequential Evaluation Process for Evaluating Disability**

The Commissioner has promulgated regulations that set forth a five-step sequential evaluation process that an ALJ must follow in evaluating whether an individual is disabled. 20 C.F.R. § 416.920 (2022). In summary, the evaluation process proceeds as follows:

> (1)      Is the claimant involved in substantial gainful activity? If the answer is "yes," the claimant is not disabled. If the answer is "no," proceed to the next step.
>
> (2)      Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement[2] and significantly limits his or her physical or mental ability to do basic work activities? If the answer is "no," the claimant is not disabled. If the answer is "yes," proceed to the next step.
>
> (3)      Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within 20 C.F.R. Part 404, Subpart P, Appendix 1? If the answer is "yes," the claimant is disabled. If the answer is "no," proceed to the next step.

---

[2] To be considered, an impairment must be expected to result in death or have lasted/be expected to last for a continuous period of at least twelve months. 20 C.F.R. § 416.909 (2022).

(4)     Does the claimant have the residual functional capacity ("RFC") to return to his or her past relevant work?  If the answer is "yes," then the claimant is not disabled.  If the answer is "no," proceed to the next step.

(5)     Does the claimant's RFC, age, education, and work experience allow him or her to make an adjustment to other work?  If the answer is "yes," the claimant is not disabled.  If the answer is "no," the claimant is disabled.

20 C.F.R. § 416.920(a)(4).

The claimant bears the burden of proof with respect to steps one through four.  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).  However, the burden shifts to the Commissioner at step five to prove that other work is available that the claimant is capable of performing.  *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008).  The claimant always retains the burden of proving lack of RFC.  *Id.*; *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 392 (6th Cir. 1999).

### C.     Claimant's Contentions

Claimant argued that the ALJ erred in several ways.  He argued that the ALJ's RFC analysis was flawed because the ALJ's discussion of his psychologically based symptoms did not speak to the Claimant's limitations surrounding the completion of a normal workday, the ALJ's limitation regarding "reasonable access to restroom facilities" was not defined in vocationally relevant terms, and the ALJ's RFC was not based on any medical opinion evidence.  (DN 15, at PageID # 665-78; DN 16, at PageID # 681-85.)  Claimant also argued that the ALJ's step five finding was in error because his hypothetical to the vocational examiner ("VE") did not accurately portray the Claimant's physical and mental impairments.  (DN 15, at PageID # 669, 673; DN 16, at PageID # 685.)  The undersigned will address each of the Claimant's arguments below.

1. **RFC**

An ALJ's RFC finding is the ALJ's ultimate determination of what a claimant can still do despite his or her physical and mental limitations.  20 C.F.R. §§ 416.945(a)(1), 416.946(c) (2022).  The ALJ bases his or her determination on all relevant evidence in the case record.  20 C.F.R. § 416.945(a)(1)-(4).  Thus, in making his or her determination of a claimant's RFC, an ALJ must necessarily evaluate the persuasiveness of the medical opinions in the record and assess the claimant's subjective allegations.  20 C.F.R. §§ 416.920c, 416.929 (2022).  The undersigned will address Claimant's individual allegations of error regarding the ALJ's RFC determination separately below.

a)   **Mental Limitations**

Claimant argued that the ALJ's RFC determination did not adequately address the limitations the Claimant's mental impairments and psychological symptoms would have on the Claimant's ability to complete a workday.  (DN 15, at PageID # 665-70; DN 16, at PageID # 681-682.)  Specifically, Claimant argued that the ALJ's RFC did not adequately account for limitations on his "ability to sustain concentration and attention to complete a workday," limitations he claimed "would clearly result in some amount of off task time, absenteeism, or both."  (DN 15, at PageID # 667.)

At step two, the ALJ found that Claimant's major depressive disorder/persistent depressive order, social anxiety disorder, agoraphobia with panic disorder, and post-traumatic stress disorder were severe impairments that significantly limited the Claimant's ability to perform basic work activities.  (R. at 20.)  At step four, in the ALJ's determination of Claimant's RFC, he found that Claimant could "maintain adequate attention and concentration to perform simple tasks on a sustained basis with normal supervision," "perform simple work in an object-focused

environment," "manage and tolerate simple changes in the workplace routine," "adapt to the pressures of simple routine work," and "interact occasionally with supervisors and coworkers in a non-public work setting." (*Id.* at 24.) In support, the ALJ acknowledged Claimant's testimony that he has panic attacks that caused him to lose his last job, has problems concentrating, and feels as though people are out to get him when he is in public. (*Id.* at 25.) The ALJ noted that Claimant had a medical history of the mental impairments the ALJ previously found to be severe. (*Id.*) But the ALJ concluded that "the consistency of the [C]laimant's allegations regarding disabling symptoms and limitations, in comparison to the objective evidence, is diminished because those allegations are greater than expected in light of the objective evidence of [ ] record." (*Id.* at 25-26.) The ALJ then summarized some of Claimant's medical records in support of his determination. (*Id.* at 28-29.) The ALJ cited that, in a February 2020 visit, Claimant reported that seeing a therapist once weekly for his anxiety and depression had "helped significantly." (*Id.* at 28 (citing *id.* at 365).) The ALJ noted that in a March 2020 follow-up visit, Claimant reported "doing better," and his provider documented moderate depression with no suicidal thoughts. (*Id.* at 28 (citing *id.* at 358).) The ALJ cited that, despite Claimant's report of "constant feelings of depression," during a June 2020 consultative examination, Claimant had adequate orientation, good memory for immediate recall and current events, normal eye contact, a tense facial expression, and a cooperative attitude. (*Id.* at 28-29 (citing *id.* at 338).) He noted that Claimant also had anxious affect and mood, reported a mistrust of others, had logical and goal directed organization, had below average fund of knowledge, evidenced concrete thinking, had adequate reality testing, showed fair insight, and demonstrated impulsive decision-making. (*Id.* at 29 (citing *id.* at 338).) The ALJ recounted that the consultative examiner diagnosed the Claimant with post-traumatic stress disorder, severe persistent depressive behavior, and social anxiety disorder. (*Id.*)

The ALJ noted that during the same time period, at a June 2020 visit with his primary care provider, Claimant reported depression and anxiety but no sleep issues, anhedonia, or suicidal ideation. (*Id.* at 29 (citing *id.* at 345).) Claimant's provider documented during the visit that Claimant was alert and oriented, had a normal affect, and was calm. (*Id.*) The ALJ cited that during a January 2021 visit to his mental health provider, Claimant reported that he could sleep for three to four hours per night and denied suicidal or homicidal thoughts or ideation. (*Id.* at 29 (citing *id.* at 547).) The ALJ asserted that this routine and conservative treatment—as opposed to aggressive treatment such as psychiatric hospitalization or inpatient treatment—suggested that the Claimant's mental symptoms and limitations were not as severe as the Claimant alleged and was not "the type of medical treatment one would expect for a totally disabled individual." (*Id.* at 29-30.) The ALJ also cited in support to the opinions of the state agency psychological consultants Michelle Bornstein, Psy.D., ("Dr. Bornstein") and Christine Bruening, Ph.D. ("Dr. Bruening"), both of which he found persuasive and consistent with Claimant's medical records. (*Id.* at 30 (citing *id.* at 80-93, 95-111).)

The Claimant argued that Dr. Bornstein's and Dr. Bruening's medical opinions supported greater limitations on his ability to stay on task, maintain concentration and pace, and be present at work than the ALJ's RFC included. (DN 15, at PageID # 667-69.) The Claimant emphasized that both Dr. Bornstein and Dr. Bruening found him to have a moderate limit on his ability to concentrate and maintain pace, which he claimed should have resulted in greater limitations. (*Id.* at 667 (citing R. at 89-90, 107).)

In their assessment of the paragraph B criteria at step three, both Dr. Bornstein and Dr. Bruening found that Claimant had a moderate limitation on his ability to concentrate, persist, and maintain pace, as well as moderate limitations in the other three paragraph B criteria regarding

understanding, remembering, and applying information; interacting with others; and adapting or managing oneself. (R. at 85, 102.) In support, both Dr. Bornstein and Dr. Bruening summarized some of the medical evidence but then stated that Claimant's "[a]lleged limitations are partially consistent with the evidence." (*Id.* at 86, 103.) They both then included "See MRFC" in their explanation, incorporating their assessment of Claimant's mental RFC in support of their overall conclusions regarding Claimant's functioning. (*Id.*) Their assessments of Claimant's mental RFC do differ to some degree, but—as is most relevant to Claimant's argument's regarding being off-task, the need for breaks, and potential absenteeism—both found that Claimant had limitations regarding "sustained concentration and persistence." (*Id.* at 89, 107.) Dr. Bornstein found that Claimant was not significantly limited in his ability to "perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances," while Dr. Bruening found that Claimant was moderately limited in his ability to do so. (*Id.* at 90, 107.) Both found that Claimant was only moderately limited in his "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." (*Id.* at 90, 108.) In the additional explanation section of their mental RFC assessments, both concluded that Claimant could "[s]ustain attention, concentration, effort and pace for simple tasks requiring little independent judgment and involving minimal variations, and do[ ] so for extended periods of two-hour segments, while maintaining regular attendance and being punctual within customary tolerances."[3] (*Id.* at 91, 109.)

---

[3] The only distinction between Dr. Bornstein and Dr. Bruening's conclusions on this point is that Dr. Bornstein referenced only "simple tasks" while Dr. Bruening referenced "simple, routine tasks." (*Compare id.* at 91, *with id.* at 109.) Claimant's argument does not turn on this distinction; therefore, it is immaterial for purposes of the instant discussion.

Given these findings, the undersigned finds that Claimant's argument regarding Dr. Bornstein's and Dr. Bruening's opinions supporting a need for greater restrictions related to absenteeism misstates those opinions and is patently without merit.  Dr. Bornstein's and Dr. Bruening's individual categorical findings are qualified by their ultimate expression of their opinion in the additional explanation section of the form.  Thus, there was no error by the ALJ in failing to discuss something the opinions did not support or find, and Claimant has offered no other evidence or authority to support his argument.

As to Claimant's argument that Drs. Bornstein and Bruening should have provided a greater narrative explanation to support their opinions, this argument is unavailing.  Claimant cited no authority requiring either Dr. Bornstein or Dr. Bruening to do more than they did here, and no authority to support that, even if more was required, an error by a state agency consultant justifies reversal.  His argument also ignores that when read as a whole, they provided a sufficient rationale to support their assessed limitations even if they declined to offer specific explanations in particular portions of their opinions.

As to Claimant's argument regarding a need for "off-task limitations" or breaks, both Dr. Bornstein and Dr. Bruening did limit Claimant to performing work in two-hour segments.  (*Id.* at 91, 109.)  The ALJ did not adopt this finding or explicitly address it in his opinion.  However, the undersigned finds Claimant has failed to demonstrate any error.  Claimant presented no authority requiring an ALJ who finds an opinion persuasive to adopt it verbatim.[4]  In fact, the opposite is

---

[4] Claimant cited to several cases allegedly in support of the notion that "[t]he ALJ must address a medical opinion that a claimant would be significantly limited in the ability to complete a normal workday or workweek without interruption from psychologically based symptoms."  (DN 15, at PageID # 665-66 (citing *Foster v. Colvin*, No. 1:14CV1940, 2015 WL 4644624, at *12 (N.D. Ohio Aug. 4, 2015); *Duggan v. Berryhill*, No. 3:17-CV-5451-BAT, 2017 WL 5415928, at *7 (W.D. Wash. Nov. 13, 2017); *Grant v. Kijakazi*, No. 1:21-CV-190-LF, 2022 WL 3272265, at *6 (D.N.M. Aug. 9, 2022)).)  But these non-binding authorities are all nondispositive of or distinguishable from the instant case.  In *Foster*, the medical evidence supported greater limitations for the claimant than it does for Claimant here.  *Foster*, 2015 WL 4644624, at *1-7.  In *Duggan*, the ALJ provided less reasoning to support his RFC

true: "an ALJ need not adopt a medical opinion verbatim, even if he found it persuasive." *Bryson v. Comm'r of Soc. Sec.*, No. 3:20-CV-667-CHB, 2022 WL 945318, at *4 (W.D. Ky. Mar. 29, 2022) (citing *Reeves v. Comm'r of Soc. Soc.*, 618 F. App'x 267, 275 (6th Cir. 2015), and *Green v. Comm'r of Soc. Sec.*, No. 2:20-cv-232, 2020 WL 4877187, at *6 (S.D. Ohio Aug. 20, 2020)). Claimant pointed to no medical evidence requiring greater limitations than those imposed by the ALJ in light of his conclusions regarding Claimant's medical records and, in particular, his conclusion that Claimant's subjective reports of his symptoms were unsupported by the objective evidence of record. The ALJ supported his conclusion regarding Claimant's overstatement of his symptoms with substantial evidence; thus, he was required to include no greater limitations in his RFC assessment than those he did. Though the ALJ did not cite extensively to the record in support of his conclusion, the undersigned has reviewed the same and finds that the ALJ did not selectively cite or mischaracterize the record regarding Claimant's overstatement of his symptoms. Specific to his allegations of concentration issues, the record contains numerous objective findings contradicting his allegations and documenting adequate or unremarkable concentration and attention. (R. at 464, 475, 479, 483, 490, 520, 524, 544, 548.)

---

determination than the ALJ did here. *Duggan*, 2017 WL 5415928, at *7 ("The ALJ provides no basis for concluding that a 'moderate limitation' in the ability to complete a normal workday and workweek without an unreasonable number and length of rest periods, would be allowed in a job (even one requiring only simple and routine work)."). As for *Grant*, the undersigned rejects the analysis of the District Court for the District of New Mexico insofar as it found an inconsistency in a state agency psychological consultant's opinion that the ALJ should have resolved. *Grant*, 2022 WL 3272265, at *6. It is not for the court to translate a "moderate limitation" into functional terms, and the undersigned sees no reason not to take the opinion of the state agency psychological consultants at face value in terms of their conclusion that even a moderate limitation was consistent with the RFC they ultimately assessed. The undersigned finds that this would constitute resolving a conflict in the evidence in a manner that is improper on substantial evidence review. *See Conner v. Comm'r of Soc. Sec.*, 658 F. App'x 248, 253 (6th Cir. 2016) (quoting in part *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990) and citing *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012)).

Under these circumstances, the undersigned finds that the ALJ's analysis of Claimant's mental impairments was supported by substantial evidence and that Claimant has not demonstrated any error in the ALJ's RFC determination related to Claimant's mental limitations.

**b)      Restroom Access Limitation**

Claimant contended that the ALJ incorrectly characterized the extent of the Claimant's needs regarding restroom access.  (DN 15, at PageID # 670-73; DN 16, at PageID # 682-83.) Specifically, Claimant argued that the ALJ's RFC determination that the Claimant needs "reasonable access to restroom facilities" was vague and "essentially a meaningless statement" that did not define in vocationally relevant terms what was required.  (DN 15, at PageID # 671.)

At step two, the ALJ noted that Claimant had a history of irritable bowel syndrome ("IBS") and urinary frequency.  (R. at 20.)  But the ALJ cited Claimant's primary care records from February, March, and June of 2020 and January of 2021 to support that Claimant was " 'feeling well,' with no acute concerns"; did not display genitourinary or gastrointestinal symptoms; and refused to have a colonoscopy.  (*Id.* at 20-21 (citing *id.* at 344, 358, 360, 365, 561-62).)  The ALJ also cited the findings from Claimant's February 2020 consultative examination with Dawn Raikes, F.N.P., ("Ms. Raikes") where Claimant's "abdomen was soft and non-tender without rebound or guarding," and "[n]o hepatosplenomegaly or masses [were] palpated." (*Id.* at 21 (citing *id.* at 333).)  Based on this evidence, the ALJ concluded that Claimant's IBS and urinary frequency were not severe impairments and did not "produce more than a minimal effect on his ability to perform basic work activities." (*Id.* at 21.)

At step four, the ALJ included in his RFC determination that Claimant "must have reasonable access to restroom facilities." (*Id.* at 24.)  The ALJ found "[C]laimant's statements

about the intensity, persistence, and limiting effects of his symptoms . . . inconsistent." (*Id.* at 30.) In particular, regarding Claimant's allegations of restroom issues, the ALJ explained,

> Additionally, although the [C]laimant asserted that he required frequent bathroom use and had incontinence, these allegations are subjective and not supported by the record. For example, in March 2020, the [C]laimant reported at his follow-up examination at St. Joseph Medical Group that he was "doing better." The [C]laimant has no genitourinary symptoms, and no gastrointestinal symptoms. Additionally, the [C]laimant's June 2020 follow-up examination with Dr. Lemmenes indicates that his neuropathic symptoms were "improving." He was "doing well" on Gabapentin with no side effects.

(*Id.* at 30 (citations omitted) (citing *id.* at 358, 360, 507).)  The ALJ found the opinion of Ms. Raikes persuasive and consistent with the medical records but inaccurately stated in his decision that Ms. Raikes opined that Claimant "did not appear to have environmental restrictions related to close proximity of bathroom to work area." (*Id.* at 31 (citing *id.* at 334).)  Ms. Raikes actually opined that "[t]he [C]laimant *does* appear to have environmental restrictions related to close proximity of bathroom to work area." (*Id.* at 334 (emphasis added).)  Ultimately, despite his evident rejection of Claimant's allegations regarding his restroom needs, the ALJ included "reasonable access" as part of his RFC and included the same in his hypothetical to the VE.  As noted by Claimant, the VE's testimony evidences that the VE equated the term "reasonable" with mere access to a restroom. (*Id.* at 62-63.)  The relevant questioning was as follows:

> ALJ:   For hypothetical number three, I'd like you to assume the individual has the same capabilities and limitations as in the previous hypothetical at the reduced sedentary exertional level, except he occasionally requires a handheld assistive device such as a cane or [*sic*] ambulation, and must have reasonable access to restroom facilities.  With those additional limitations, could the individual perform any work, and if so, could you give me examples?
>
> VE:    Your Honor, I apologize. I did get the handheld assistive device, but what was the second restriction?
>
> ALJ:   Reasonable access to restroom facilities.  And that's occasional use of the handheld assistive device, the cane.

> VE:    Well, Your Honor, these are two areas that are once again not addressed by the <u>Dictionary of Occupational Titles</u>.  However, based on my experience as a rehabilitation counselor, training, and education, . . . [t]hese jobs are typically found inside processing facilities or buildings where there is by occupational standards, the Occupational Health Administration, access to restroom facilities.  Therefore, the access would also not be impaired – impair the ability to perform these jobs.  So, the combination of these impairments would not prevent an individual from performing the previously cited sedentary jobs.

(*Id.*)  Claimant did not cross-examine the VE regarding this testimony; instead, his representative's cross-examination focused on use of a cane and additional limitations related to Claimant's mental impairments.  (*Id.* at 65-68.)

Claimant argued that "reasonable" was not a sufficiently defined limitation "in terms of either time, frequency, or proximity to [Claimant]'s work state" and criticized the ALJ for finding some limitation necessary but failing to adequately define that limit.  (DN 15, at PageID # 671.)  However, the undersigned finds that Claimant's argument misstates the ALJ's conclusion about Claimant's restroom related impairments.  While the ALJ did misstate Ms. Raikes's opinion, the other portions of his decision and RFC analysis made clear that he did not think Claimant was as limited as he alleged.  Thus, unlike the other cases cited by Claimant, this is not a case where the medical evidence of record supports a history of impairment.  *Cf. Moseley v. Comm'r of Soc. Sec.*, No. CV 19-13147, 2021 WL 750815, at *7 (E.D. Mich. Feb. 2, 2021), *report and recommendation adopted*, No. 19-CV-13147, 2021 WL 735883, at *1 (E.D. Mich. Feb. 25, 2021) (finding ALJ's RFC limitation that claimant would need a two-minute break each hour to use the restroom insufficient in light of the medical evidence); *Durr-Irving v. Colvin*, 600 F. App'x 998, 1003 (7th Cir. 2015) (finding that ALJ should have discussed how claimant's urinary incontinence did not affect RFC determination "given the medical evidence, her testimony, and the vocational expert's opinion").

Here, the medical evidence supporting Claimant's testimony is scant.  Claimant testified at the 2021 hearing in this matter that he used the restroom six to seven times in the first five to six hours of his day, his bowel movements are liquid, things go "right through [him]," it has been that way for three to four years, he is in the restroom fifteen to twenty minutes at a time, and he does not wear diapers though he is constantly changing his underwear when he has an accident.  (R. at 51.)  Based on the undersigned's review of the medical evidence of record, the only diagnosis of IBS in the record is that of Ms. Raikes.  (*Id.* at 333.)  IBS is not listed among his active problems and does not appear to ever have been diagnosed/assessed by his primary care physician though she did list hemorrhoids and urinary frequency as active problems/assessments.  (*Id.* at 343-45, 349-50, 358-60, 365-67, 374, 377, 384-86, 390-91, 397-98, 400, 403-404, 422, 561, 563, 576-78, 591.)  Despite the first medical evidence in the record being from June 2019, he did not report to his primary care provider—or any of his other medical providers—any symptoms like those described at the hearing until November 10, 2020.  Prior to that date, he frequently denied gastrointestinal/genitourinary symptoms such as abdominal pain, vomiting, nausea, constipation, and/or diarrhea and his provider consistently documented positive bowel sounds in her physical exam.  (*Id.* at 344-45, 360, 366, 376, 385, 391, 399, 404, 422, 591, 597.)  In February 2020, despite reporting no symptoms to his providers, he told Ms. Raikes that he had a history of stomach issues that began a year ago and included frequent bowel movements six to seven times per day three to four days per week, incontinence, and things going straight through him though he reported no bloody stools.  (*Id.* at 332.)  Claimant's reported symptoms notwithstanding, Ms. Raikes documented that Claimant's abdomen was soft and nontender with no rebound or guarding and that, on palpation, there was no hepatosplenomegaly or masses.  (*Id.* at 333.)  She included IBS among her diagnostic impressions.  (*Id.*)  During his November 10, 2020, visit Claimant first

reported symptoms to his primary care provider including intermittent rectal pain for the past six months that occurred every other day, rectal bleeding with bowel movements, and diarrhea six times per day that was worse in the morning.  (*Id.* at 575.)  He had not reported similar symptoms when he saw her approximately three months earlier on September 9, 2020.  (*Id.* at 589-92.)  Nonetheless, his provider assessed hematochezia and referred Claimant to general surgery for a consultation and a colonoscopy.  (*Id.* at 576.)  Even during this visit, his provider documented Claimant had no abdominal pain and positive bowel sounds.  (*Id.* at 577.)  The record reflects that Claimant cancelled and did not attend his general surgery consult in late November 2020.  (*Id.* at 568.)  At his visit with his primary care provider on January 13, 2021, he complained of the same symptoms but indicated that he had cancelled his appointment, refused to have a colonoscopy at that time, and did not complete an ordered stool workup.  (*Id.* at 561.)  There are a few medical records post-dating that visit to his podiatrist and mental health providers, but none reference the same symptoms.  (*Id.* at 515-16, 547-54.)

These records do not support a level of impairment contradicting the ALJ's conclusion regarding Claimant's symptoms.  And because of the ALJ's evident rejection of any great restriction, the undersigned cannot conclude that the ALJ's use of the term reasonable was improper.  The records do not demonstrate any clear need for greater bathroom access than normal, which is consistent with the ALJ's opinion.  This not a case where the ALJ ignored an impairment or failed to consider relevant evidence.  The ALJ minimized the importance of Claimant's symptoms in his decision evidencing his clear belief that the same did not impair Claimant to a significant degree.  Thus, while in other cases, "reasonable" may be an insufficient limitation, Claimant has failed to demonstrate that it was insufficient in his case.  In particular, it had to have been evident to the ALJ at the hearing that the VE was construing reasonable as mere access to a

restroom, and he did not seek to clarify or amend his hypothetical, which implies that he believed that interpretation was sufficient for the type of impairment he was addressing. The undersigned finds that the ALJ supported his conclusion with substantial evidence and that the ALJ's conclusion was not a misrepresentation of the evidence of record.

Finally, while the ALJ certainly misstated the opinion of Ms. Raikes, the undersigned finds that any error is harmless. At best, the ALJ failed to comply with the dictates of 20 C.F.R. § 416.920c regarding assessing the persuasiveness of the opinion evidence given his misstatement of her opinion, but it is clear from his decision what he would have said had he properly read that opinion: that it was unsupported by the record and inconsistent with even her own objective findings. Under the prior regulations, the Sixth Circuit recognized three situations where an ALJ's procedural error in considering a medical source opinion was harmless. *See Shields v. Comm'r of Soc. Sec.*, 732 F. App'x 430, 438 (6th Cir. 2018). These situations are "(1) where 'a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it,' (2) where 'the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion,' and (3) 'where the Commissioner has met the goal of . . . the procedural safeguard of reasons.' " *Id.* (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004)). However, " '[a] procedural error is not made harmless simply because [the claimant] appears to have . . . little chance of success on the merits." *Id.* (quoting *Wilson*, 378 F.3d at 547). The undersigned finds that the third category is met in this instance in that the remainder of the ALJ's opinion evidences what his conclusions regarding the required supportability and consistency factors would be. Though as noted above, little chance of success on the merits alone is not enough, courts have also found that "[w]hen 'remand would be an idle and useless formality,' courts are not required to 'convert judicial review of agency action into a ping-pong game.' "

*Kobetic v. Comm'r of Soc. Sec.*, 114 F. App'x 171, 173 (6th Cir. 2004) (quoting *NLRB v. Wyman–Gordon Co.*, 394 U.S. 759, 766 n.6 (1969), and citing *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) ("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result.")).  This is the case here given the sufficient analysis elsewhere in the ALJ's opinion regarding Claimant's reported symptoms.

Accordingly, the undersigned finds that Claimant had failed to demonstrate reversible error in the ALJ's analysis regarding his symptoms and alleged need for greater than provided restroom access.

### c)      Lack of Medical Opinion Supporting RFC

Claimant argued that the ALJ's RFC findings was invalid because it was not based on any medical opinion such that the ALJ improperly "played doctor" and based his RFC on "his lay interpretation of the evidence."  (DN 15, at PageID # 673-78; DN 16, at PageID # 683-85.) Claimant cited in support to *Deskin v. Comm'r of Soc. Sec.*, 605 F. Supp. 2d 908, 911 (N.D. Ohio 2008).  (DN 15, at PageID # 673-74.)  The undersigned finds Claimant's argument to be without merit for several reasons.

First, contrary to Claimant's position, an ALJ is not required to base his RFC on a medical opinion.  *See Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 727 (6th Cir. 2013) ("The ALJ was not required to obtain a medical expert to interpret the medical evidence related to [claimant's] physical impairments."); *Brown v. Comm'r of Soc. Sec.*, 602 F. App'x 328, 331 (6th Cir. 2015) (recognizing that there is no authority to support the proposition "that an ALJ must, as a matter of law, seek out a physician's medical opinion where one is not offered").  Instead, the determination of a claimant's RFC is left to the ALJ.  20 C.F.R. §§ 416.945, 416.946.

Second, Claimant's reliance on *Deskin* is misplaced.  In *Deskin v. Comm'r of Soc. Sec.*, the Northern District of Ohio held that an ALJ may make a "commonsense judgment about functional capacity even without a physician's assessment," but only when "the medical evidence shows relatively little physical impairment."  *Deskin*, 605 F. Supp. 2d at 912 (quoting *Manso-Pizarro v. Sec'y of Health & Hum. Servs.*, 76 F.3d 15, 17 (1ˢᵗ Cir. 1996)).  However, when "making the residual functional capacity finding, the ALJ may not interpret raw medical data in functional terms."  *Id.*; *see also Branscum v. Berryhill*, No. 6:17-CV-345-HAI, 2019 WL 475013, at *11-12 (E.D. Ky. Feb. 6, 2019) (citing *McGranahan v. Colvin*, No. 0:14-CV-83-JMH, 2015 WL 5828098, at *3 (E.D. Ky. Oct. 1, 2015)).  The *Deskin* court articulated the rule as follows:

> [W]here the transcript contains only diagnostic evidence and no opinion from a medical source about functional limitations (or only an outdated nonexamining agency opinion), to fulfill the responsibility to develop a complete record, the ALJ must recontact the treating source, order a consultative examination, or have a medical expert testify at the hearing.

*Deskin*, 605 F. Supp. 2d at 912.  While the Sixth Circuit has not commented on *Deskin,* significant case law in this circuit supports the principle that when the evidence of physical impairment is more than minimal, an independent determination of functional limitations by the ALJ is not supported by substantial evidence and a medical opinion is required.  *See Gross v. Comm'r of Soc. Sec.*, 247 F. Supp. 3d 824, 828-29 (E.D. Mich. 2017) (collecting cases).  However, the "*Deskin* rule" narrowly applies in only two situations: "(1) where an ALJ made an RFC determination based on *no* medical source opinion; or (2) where an ALJ made an RFC determination based on an outdated source opinion that did not include consideration of a critical body of objective medical evidence."  *Branscum*, 2019 WL 475013, at *11 (quoting *Raber v. Comm'r of Soc. Sec.*, No. 4:12-CV-97, 2013 WL 1284312, at *15 (N.D. Ohio Mar. 27, 2013)); *see also Kizys v. Comm'r of Soc. Sec.*, No. 3:10-CV-25, 2011 WL 5024866, at *2 (N.D. Ohio Oct. 21, 2011).  Neither of these

scenarios exist in the instant case.  The record contains a number of medical opinions, none of which Claimant alleged were outdated and some of which the ALJ found persuasive.

As to Claimant's physical impairments, the opinions of record included those of the state agency medical consultants, Donna Farmer, M.D., and Douglas Back, M.D.; Ms. Raikes; and Claimant's treating provider Sarah Greenwell, A.R.N.P. ("Ms. Greenwell").  (R. at 31-32.)  The state agency medical consultants opined that Claimant was capable of work at the medium exertional level, which the ALJ found was not persuasive in light of the medical records that "reflect[ed] that [Claimant] [wa]s more limited than the doctors opined."  (*Id.* at 31 (citing *id.* at 80-93, 95-111).)  Ms. Raikes opined that Claimant "may have difficulty with prolonged walking and standing"; "may have difficulty with repetitive arm and hand movements"; "would have difficulty with repetitive overhead activity"; "would have difficulty with squatting and bending over on a repetitive basis"; and was "able to ambulate without the use of an assisted device."  (*Id.* at 334.)  She summarized that "[a]side from [ ] [her] noted restrictions, the [C]laimant appear[ed] functionally intact."  (*Id.*)  The ALJ found her opinion persuasive, though as noted above he misstated her restriction regarding Claimant's need to work in close proximity to a restroom, an opinion he was unlikely to share if he had correctly summarized it.  (*Id.* at 31.)  The ALJ found the opinion of Ms. Greenwell not persuasive given her prescription of a cane for ambulation and that Claimant was not as limited as the ALJ alleged.  (*Id.* at 32 (citing 499, 561-62).)  Portions of these opinions support the ALJ's RFC determination in a way that makes *Deskin* inapplicable. Though Claimant contended that the ALJ had to translate some of these restrictions into functional terms, he did not do so solely on the basis of objective findings in the record; he did so based on opinion evidence about Claimant's abilities.  The undersigned finds that Claimant has failed to demonstrate that the same was error or was inconsistent with the medical evidence of record.

As to the Claimant's mental impairments, the record contained the opinions of state agency psychological consultants Dr. Bornstein and Dr. Bruening, which were discussed above, and the opinion of consultative examiner, Brian McLean, M.S., the latter of which the ALJ found not persuasive.  (*Id.* at 31.)   As Claimant's argument regarding the insufficiency of the opinion evidence regarding his mental impairments is largely a recitation of the argument the undersigned rejected above regarding the ALJ's opinion not comporting with Dr. Bornstein and Dr. Bruening's opinion, the undersigned rejects it here for the same reasons as set forth above.  And again, as is relevant to whether *Deskin* applies, this is not a case where there was no opinion evidence or outdated evidence.  The ALJ considered and weighed the relevant opinion evidence for its persuasiveness as he is required to do by the applicable regulations.  20 C.F.R. § 416.920c.

Ultimately, it appears that Claimant wishes the ALJ had imposed further restrictions, but that wish alone does not render the ALJ's opinion unsupported by substantial evidence.  Claimant has failed to proffer any relevant authority requiring the ALJ to be able to connect each piece of his RFC determination to a medical opinion in order to avoid reversible error.   Here, the undersigned finds that the ALJ provided a sufficient discussion of both the medical evidence of record and the opinion evidence in the record to support his RFC determination.  As the Claimant has demonstrated no substantive or procedural errors, the undersigned finds his arguments are without merit.

### d)      Substantial Evidence Generally

Based on the conclusions above, the undersigned finds that the ALJ's RFC determination was supported by substantial evidence.   His analysis more than surpasses the threshold for substantial evidence, which is "not high."  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citing *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)) ("Under the substantial-evidence standard,

a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations. And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high.") Claimant did nothing but point to other evidence in the record he claimed supported an opposite conclusion to that reached by the ALJ. However, this court's role is not to second-guess the ALJ's conclusions. *Gayheart*, 710 F.3d at 374; *Smith*, 893 F.2d at 108; *Ulman*, 693 F.3d at 714.

### 2.    Step Five

Claimant also argued that the ALJ's finding No. 9 was in error because the hypothetical questions the ALJ posed to the VE did not accurately portray Claimant's impairments and, in particular, did not address his dizziness or balance limitations. (DN 15, at PageID # 669, 673; DN 16, at PageID # 685.) At step five, the ALJ has the burden of demonstrating that the Claimant can perform given his or her RFC, age, education, and past work experience. 20 C.F.R. § 416.920(a)(4)(v), (g); 20 C.F.R. § 416.960(c) (2022); *Jordan*, 548 F.3d at 423. The Commissioner may meet this burden by relying on expert vocational testimony received during the hearing to determine what jobs exist in significant numbers in the economy that the claimant can perform considering the combination of his or her limitations. *See, e.g.*, *Fry v. Comm'r of Soc. Sec.*, 476 F. App'x 73, 76 (6th Cir. 2012); *Wilson*, 378 F.3d at 548. But a VE's testimony can constitute substantial evidence to support the Commissioner's findings that a claimant is capable of performing a significant number of jobs existing in the economy, *Bradford v. Sec'y of Dep't of Health & Hum. Servs.*, 803 F.2d 871, 874 (6th Cir. 1986) (per curiam), only so long as the VE's testimony is based on a hypothetical question that "accurately portrays [a claimant's] individual physical and mental impairments." *Varley v. Sec'y of Health & Hum. Servs.*, 820 F.2d 777, 779 (6th Cir. 1987) (quoting *Podeworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984)). *See also Cline*

*v. Comm'r of Soc. Sec.*, 96 F.3d 146, 150 (6th Cir. 1996).  "However, the ALJ is only required to incorporate into the hypothetical questions those limitations which have been accepted as credible."  *Hare v. Comm'r of Soc. Sec.*, 37 F. App'x 773, 776 (6th Cir. 2002); *see also Stanley v. Sec'y of Health & Hum. Servs.,* 39 F.3d 115, 118-19 (6th Cir. 1994).  The undersigned has already found above that the ALJ's determination of Claimant's RFC was supported by substantial evidence and/or that any errors were harmless.  Thus, the ALJ was not required to include additional limitations related to Claimant's mental impairments or access to a restroom in his hypothetical to the VE, and the VE's testimony constitutes substantial evidence to support his step five determination.

Accordingly, the undersigned finds that Claimant has failed to demonstrate any reversible error in the ALJ's step five analysis.

## III.    RECOMMENDATION

For the foregoing reasons, the undersigned **RECOMMENDS** that final decision of the Commissioner be **AFFIRMED.**

Colin H Lindsay, Magistrate Judge
United States District Court

July 5, 2023

cc:    Counsel of Record

### Notice

Pursuant to 28 U.S.C. § 636(b)(1)(B)-(C), the undersigned Magistrate Judge hereby files with the Court the instant findings and recommendations.  A copy shall forthwith be electronically transmitted or mailed to all Parties.  28 U.S.C. § 636(b)(1)(C).  Within fourteen (14) days after being served, a party may serve and file specific written objections to these findings and recommendations.  Fed. R. Civ. P. 72(b)(2).  Failure to file and serve objections to these findings and recommendations constitutes a waiver of a party's right to appeal.  *Id.; United States v. Walters,* 638 F.2d 947, 949-50 (6th Cir. 1981); *see also Thomas v. Arn,* 474 U.S. 140 (1985).